**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN BARROSO, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 07-3978 (WHW) |
| NEW JERSEY TRANSIT CORP., POLICE CHIEF JOSEPH C. BOBER, | |
| Defendants. | |

**Walls, Senior District Judge**

This is a civil rights action in which plaintiff alleges that he was unlawfully suspended and then fired due to his race, ancestry and ethnic characteristics. Defendants New Jersey Transit Corporation and former Police Chief Joseph Bober ("Defendants") deny this, and instead claim that plaintiff was suspended and fired because of legitimate business reasons. Each defendant moves for summary judgment. Pursuant to Rule 78.1 of the Local Rules, the motions are decided without oral argument.

1

**NOT FOR PUBLICATION**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Juan Barroso is a Hispanic male. He has worked in law enforcement since 1988 and began employment with defendant New Jersey Transit Corporation (the "NJTC") in 2002. (Compl. ¶ 5.) Defendant Joseph Bober was, during all relevant periods, the Chief of Police for the NJTC. (Compl. ¶ 4.) Barroso was suspended by Chief Bober on June 1, 2004, after Barroso was arrested by the Hoboken Police. (Compl. ¶¶ 17, 20.) Bober terminated Barroso's employment with the NJTC on May 24, 2007. (Compl. ¶ 24.)

Barroso's suspension and termination trace their origins to two events that took place in May 2004. On May 15, 2004, Barroso accompanied his girlfriend, Wilnelia DeJesus, to pick up her children from their grandmother, Merida DeJesus. Wilnelia had recently regained custody of her children. (Compl. ¶¶ 10, 13, NJTC Statement of Fact ¶ 11.) While moving the children's belongings out of Merida's house, Wilnelia asked Merida for the children's bank account passbooks. (Compl. ¶ 14.) While Merida gave the passbooks to Wilnelia, she would later claim that she gave up the passbooks because she was scared that Barroso would report her to the police. (Compl. ¶ 17.)

Two days later, Barroso accompanied Wilnelia to a bank. Wilnelia withdrew money from the children's passbook accounts. (Compl. ¶ 16.) Merida then contacted the police alleging that the money had been withdrawn from the accounts improperly. (Compl. ¶ 17.) Barroso was arrested for Theft by Deception and later entered into a Pre-Trial Intervention Program without pleading guilty. (Compl. ¶¶ 17, 18.) After Barroso reported his arrest and entrance into a Pre-Trial Intervention Program to the NJTC, the NJTC charged him with "conduct unbecoming of a police officer." (Compl. ¶ 19.) On June 1, 2004, Barroso was suspended without pay. (Compl. ¶ 19.)

**NOT FOR PUBLICATION**

Barroso's "conduct unbecoming of a police officer" charge was addressed during a trial before an Administrative Law Judge ("ALJ"). (Compl. ¶ 21.) At the completion of the hearing, the ALJ ordered that Barroso be reinstated with back pay. (Compl. ¶ 23.) The Office of the state Attorney General, which represented the NJTC police department in the hearing, filed written exceptions to the Judge's findings and conclusions. (Bober's Statement of Fact ¶ 7, Pl. Resp. to Bober's Statement of Fact ¶ 7.) Swayed by the Attorney General's arguments, Chief Bober rejected the Judge's findings and conclusions. And instead of reinstating Barroso, on May 24, 2007, Bober terminated Barroso's employment with NJTC. (NJTC's Statement of Fact ¶ 27.)

Barroso appealed Bober's decision to the New Jersey Superior Court Appellate Division, (Bober's Statement of Fact ¶ 10, Pl. Resp. to Bober's Statement of Fact ¶ 10,) and filed this action alleging that his suspension and termination were a result of racial animus. (Compl. ¶ 24.) On April 22, 2009, the Appellate Division reversed Bober's determination and ordered that Barroso be reinstated to his former position. (Bober's Statement of Fact ¶ 10, Pl. Resp. to Bober's Statement of Fact ¶ 10.) On May 20, 2009, Barroso was reinstated. (NJTC's Statement of Fact ¶ 39.) Two days later, Barroso was suspended as being unfit for duty. (Id. at ¶ 40.)

While Barroso's case was pending, he applied for disability retirement. (NJTC's Statement of Fact ¶ 22.) He claimed that he had "End stages of Liver Disease, chronic fatigue, sever (sic) depression, [was] unable to make rational decision, [and suffered from] panic disorder and anxiety attacks." (Id.) His application also noted that Barroso was totally and permanently disabled and no longer able to perform his duties. (Id.) Barroso later filed a second Application for Disability Retirement, which similarly stated that he was totally and permanently disabled. (NJTC Br. Ex. 10.) Barroso later withdrew the application. (NJTC's Statement of Fact ¶ 25.)

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248. The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial. See Anderson, 477 U.S. at 249. In so doing, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor. Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

**NOT FOR PUBLICATION**

## DISCUSSION

### I. <u>Pleading</u>

Defendant NJTC claims that plaintiff has not brought a section 1983 claim, and that as a state entity, a section 1981 claim cannot be sustained against it. Defendant Bober similarly argues that Barroso has only brought his first claim pursuant to 42 U.S.C. § 1981 instead of 42 U.S.C. § 1983. Because section 1983 provides the remedy for damages against a state actor for an action arising out of a section 1981 violation, both defendants claim that Barroso has not presented a claim under which he may obtain relief.

NJTC is a state entity because it is "an instrumentality of the State exercising public and essential governmental functions." N.J.S.A. 27:25-4(a). While Count 1 of the complaint only alleges that the defendants violated section 1981, Barroso states in his complaint that "this is a civil rights action to redress the deprivation of Plaintiff's civil liberties under the Constitution of the United States secured under 42 U.S.C. Section 1981, 1983." (Compl. ¶ 1.) The failure to reference section 1983 again in the first claim is not fatal. The purpose of Rule 8 is to give "the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1215 (3d ed. 1998). We are instructed by Rule 8(e) to construe pleadings liberally. Fed. R. Civ. P. 8(e). Indeed, "so long as the court can discern from the facts a cognizable basis for relief, the notice requirement of Rule 8 is met." <u>Etienne v. Oyake</u>, 347 F.Supp.2d 215, 219 (D.V.I. 2004). As demonstrated by plaintiffs' argument in favor of and defendants' arguments against imposing liability under section 1983, the defendants have been provided adequate notice of the charges against them.

**NOT FOR PUBLICATION**

## II.     Statute of Limitations

NJTC and Bober argue, and the Court agrees, that Barroso's claim under the New Jersey Law Against Discrimination ("LAD") concerning his suspension is time-barred. Barroso was suspended on June 1, 2004. (Compl. ¶ 19.) The LAD has a two-year statute of limitations. Roa v. Lafe, 985 A.2d 1225, 1228 (N.J. 2010). A LAD claim concerning Barroso's suspension would be timely only if brought by June 1, 2006. Barroso did not initiate this suit until August 20, 2007, (ECF No. 1) and his LAD claim concerning his suspension is untimely. Barroso's termination, however, did not occur until May 24, 2007; his claim related to his termination was timely filed within the statute of limitations.

Barroso argues that his federal discrimination claim is subject to the statute of limitations in 28 U.S.C. § 1658(a). Section 1658 sets a uniform four-year statute of limitations for civil actions arising under Acts of Congress enacted after December 1, 1990. 28 U.S.C. § 1658. Barroso claims that this statute of limitations applies to the current action because section 1981 was amended in 1991 to confer protection to individuals, like him, who suffered discrimination during their employment. Both NJTC and Bober contend that section 1658 does not apply to Barroso's suspension or termination claims. Instead, as a section 1983 action, the two-year statute of limitations borrowed from New Jersey state law applies.

Section 1981 does not provide a private right of action against a state actor. Ford v. Se. Pennsylvania Trans. Auth., 374 F. App'x 325, 326 (3d Cir. 2010). Instead, "the exclusive remedy for relief from a state agency for civil rights violations, including race discrimination, is § 1983." Id. (citing McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009)). Barroso has brought an action against a state agency and may only allege a violation of section 1983. The four-year statute of limitations from 28 U.S.C. § 1658, which Barroso claims is

appropriate, applies to claims brought under section 1981, not to a section 1983 action that may encompass rights guaranteed by section 1981. Because section 1981 does not provide a private right of action, Barroso may not take shelter in this four-year statute of limitations.

Section 1983 does not supply its own statute of limitations. Instead, courts borrow the statute of limitations from state personal-injury law. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010). In New Jersey, the statute of limitations for a personal-injury claim is two years. Id. Given the applicable two-year statute of limitations, similar to Barroso's LAD claim, his federal suspension, but not termination, claim is time-barred.

### III. Discrimination

#### a. Section 1983 Claim Against New Jersey Transit Corporation

Title 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Government units may be sued under section 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). Liability on the part of a governmental body, however, does not result from solely employing an individual who violates section 1983. Bd. of Cnty. Comm'rs of Bryan County, Olka. v. Brown, 520 U.S. 397, 403 (1997). To substantiate his claim against NJTC, Barroso is required to show either that the NJTC "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated, or acted pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels," McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (internal

quotations omitted), or that Bober "possesse[d] final authority to establish [governmental] policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

While Barroso does not point to anything that to support the conclusion that NJTC had either a policy or custom of racial discrimination, or that his termination was a result of such a policy, he does complain that "Chief Joseph Bober, the policy-maker for New Jersey Transit Corporation," discriminated against him. (Pl. Reply Br., at 1.) Aside from merely calling Bober a policy-maker, Barroso does not offer any evidence that Bober was able to establish NJTC policy concerning terminations. Because "proving that [the governmental] official is a final policymaking authority is a fundamental element of a § 1983 cause of action against a [governmental unit]," Barroso's failure to adequately present facts concerning any policymaking authority that Bober might have had is fatal. LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003). Barroso did not establish that either a policy or custom of discrimination existed or that Bober was a policy-maker. There is no dispute of material fact. As a matter of law, the NJTC did not violate section 1983.

### b. LAD Claim Against Chief Joseph C. Bober

It is unclear whether Barroso intended to bring a LAD claim against Bober.[1] Assuming that he did, Bober is granted summary judgment as to this claim.

Bober, as Chief of Police, was Barroso's supervisor. The New Jersey Supreme Court has "held that the plain meaning of the definition of employer in the LAD does not include a supervisor." Cicchetti v. Morris Cnty. Sheriff's Office, 947 A.2d 626, 645 (N.J. 2008). Instead, supervisory employees may be liable only for "aiding and abetting" discrimination. Id. Barroso alleges that Bober is the one who discriminated against him by unjustly suspending and

---

[1] While the heading of Barroso's second claim identifies only NJTC, the text of the claim alleges that actions by the "defendants" violated the LAD. (Compl. ¶ 29.)

**NOT FOR PUBLICATION**

terminating him. (Compl. ¶¶ 20, 24.)  Under the LAD, "the alleged principal wrongdoer cannot aid and abet his own wrongful conduct."  Figueroa v. Princeton Univ., 2008 WL 2917178, at *9 (N.J.Super.A.D. July 31, 2008) (citing Newsome v. Admin. Office of the Court of the State of New Jersey, 103 F.Supp.2d 807, 823 (D.N.J. 2000)).  Plaintiff has submitted no evidence that Bober aided or abetted anyone in discriminating against him and, as a supervisor, he may not be held liable for his own actions under the LAD.  There is no dispute of material fact.  As a matter of law, Bober did not violate the LAD.

### c. Section 1983 Claim Against Bober and LAD Claim Against NJTC

The burden shifting paradigm articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is used in analyzing both LAD claims and claims of discrimination under section 1983.  Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1139 (N.J. 2005) (noting that in reviewing LAD claims, New Jersey employs the McDonnell Douglas burden-shifting methodology); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (applying the McDonnell Douglas framework to a racial discrimination claim under section 1983).  Under this methodology, Barroso must first establish a prima facie case of unlawful discrimination.  McDonnell Douglas, 411 U.S. at 802.  A plaintiff can establish a prima facie case of discrimination by "showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802).  Failure to meet this threshold requirement may result in summary judgement.  Novak v. Posten Taxi Inc., No. 09-4496, 2010 WL 2676384, at *1 (3d Cir. July 7, 2010).

**NOT FOR PUBLICATION**

Barroso easily meets the first and third prong of the McDonnell Douglas test because he is Hispanic and was terminated in 2007. As to the second prong, whether Barroso was qualified for the position he sought to retain, there is disagreement. Barroso contends that he "was performing his duties and responsibilities in a satisfactory manner." (Pl. Reply Br., at 24.) Defendants contend that Barroso was unfit for duty and could not serve as a police officer when he was terminated in 2007. Because Barroso's claims regarding his suspension are time barred, the Court considers whether he was qualified for his position when terminated in 2007.

On October 12, 2005, Barroso submitted an Application for Disability Retirement to NJTC. This application noted that in addition to suffering from a panic disorder, anxiety attacks, and severe depression, Barroso was "unable to make rational decisions." (NJTC's Statement of Undisputed Fact ¶ 22.) In this application Barroso also indicated that he was "totally and permanently disabled and no longer able to perform his job duties." (NJTC Br., at 5.) Barroso also submitted a second application which repeated that he was "unable to make rational decisions and have a clear thought process."[2] (NJTC's Statement of Undisputed Fact ¶ 24.) Both of these applications were signed by a physician. Barroso later withdrew the applications in 2006 claiming that he had been medically cleared. While Barroso noted that documentation from physicians could be supplied to the NJTC, no such records supporting his contention were ever provided. (Id. at ¶ 25.) There are no further accounts concerning Barroso's competency before his termination.

For LAD claims, the test for qualification applied in the hiring and termination contexts is slightly different. When alleging failure to hire due to discrimination, the plaintiff must allege that he was not hired despite the fact that he "was qualified for [the] position." Andersen v.

---

[2] Defendants also contend that Barroso was charged with simple assault, had a drinking problem and had his firearms and gun purchaser identification card forfeited. These events took place after Barroso's 2007 termination. They are not considered in determining whether he was qualified at the time of his termination.

**NOT FOR PUBLICATION**

Exxon Co., U.S.A., 446 A.2d 486, 491 (N.J. 1982).[3] In the termination context, as long as the plaintiff shows that he "performed in the position up to the time of termination, the slight burden of the second prong is satisfied. Simple proof of continued employment is not enough." Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1143-44 (N.J. 2005). The present case is a bit unusual in that it does not fit neatly into either of these paradigms; although Barroso was terminated, due to his suspension, he was not actually performing his duties as a police officer at the time of discharge. As such, his termination was more akin to a failure to reinstate which the Court will examine under the "qualified for the position" standard.

The only references that Barroso makes to his qualifications are his claims that before his suspension he "had performed his duties and responsibilities in a satisfactory manner," (Compl. ¶ 9) and "has easily and overwhelmingly established a prime facie case of unlawful discrimination." (Pl. Reply Br., at 20). While all that Barroso must put forward is proof that he "was qualified for the position [he] sought, not proof that [he] was better qualified than other applicants," Patterson v. McLean, 491 U.S. 164, 216 (1989) (overruled on other grounds), Barroso neither provides any evidence establishing his competency in 2007 nor counters defendants' contention that at the time he was terminated, he was unfit for duty. Indeed, the only fact which potentially weighs against a finding that he was unfit for duty is his unsupported statement in 2006 that he had been medically cleared. Barroso "has a burden of setting forth specific facts showing that there is a genuine issue for trial." Wiggins v. Cmty. College of Philadelphia, No. 99-1822, 2000 WL 100118, at *3 (E.D. Pa. Jan. 31, 2000). Concerning his qualifications, one unsubstantiated statement alone does not create a reasonable dispute of material fact.

---

[3] Section 1983 claims for all adverse employment actions are analyzed under the "qualified for the position" test. See Chen v. Newark Public Schools, No. , 2009 WL 3756872, at *3 (D.N.J. Nov. 6, 2009).

**NOT FOR PUBLICATION**

Viewing the facts and their totality in the light most favorable to Barroso, plaintiff has not established a prima face case for discrimination because he has not shown that he was qualified for the position he sought.  There is no dispute of material fact.  As a matter of law, Bober did not violate section 1983 and NJTC did not violate the LAD.

## CONCLUSION

New Jersey Transit Corporation's motion for summary judgment is granted.  Joseph C. Bober's motion for summary judgement is granted.

**s/ William H. Walls**
United States Senior District Judge
